## LICHTENBERGER–FERGUSON CO. v. WELCH, Collector of Internal Revenue.

### No. 3568.

District Court, S. D. California, Central Division.

Nov. 28, 1930.

J. Wisemen Macdonald, and W. W. Wallace, both of Los Angeles, Cal., and Chas. F. Hutchins, of Pasadena, Cal., for plaintiff.

Samuel W. McNabb, U. S. Atty., of Los Angeles, Cal. (Ignatius F. Parker, Asst. U. S. Atty., of Los Angeles, Cal., of counsel), C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Alva C. Baird, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., and Richard W. Wilson, Sp. Atty., Bureau of Internal Revenue, of Los Angeles, Cal., for defendant.

HAZEL, District Judge.

In this case we are concerned with plaintiff's asserted right to income tax deductions, as hereinafter stated. Concededly, plaintiff's books were kept on the accrual basis, one of two systems of keeping books relating to business transactions recognized by the Internal Revenue Department. In plaintiff's income tax return filed for the year 1919, it claimed a deduction of $38,559.17, arising out of the delivery of a series of promissory notes payable in monthly installments within the year 1920, and one note in January, 1921, given respectively to the La Fountain Bulletin Service and the Foster & Kleiser Company for billboard advertising. The promissory notes were given as future installments for such advertising (during a period of 12 months), and, though regarded as a necessary business expense, based upon the advertising companies agreeing to perform services and acceptance by them in full payment for the

particular services for the year 1920, it is nevertheless questionable whether the plaintiff's deductions from gross income were justified as a liability incurred for the year 1919. None of the services apparently were to be performed at the end of the year when the notes were accepted. The contracts were canceled in February, 1921, neither remaining in force.

The taxing department, under section 212 of the Revenue Act of 1918 (40 Stat. 1064), had the right to make the computation upon a basis which would clearly reflect the income, and no implied right to deduct expenses for the ensuing year can be read into the provision or into the promulgated regulations. (See article 22 and regulations 45-62–65 and 69. Article 321, Reg. 74.) Keeping its books on an accrual basis does not, in my opinion, imply the right to reduce the income by incurred liability which is not to be met or paid until a subsequent year. There are numerous decisions to support the determination of the taxing department in the instant case, namely, that the books must be kept in such a manner as to clearly disclose the income. As said in Bull v. Commissioner, 7 B. T. A. 993: "It is necessary, when determining whether an item accrued, to determine in essence whether its deduction during the period under consideration is consistent with the clear reflection of income or would bring about a distortion." It was not enough to show a contractual obligation for which the promissory notes, payable in a succeeding year, were given in payment to create a proper deduction for the year 1919, since there was no incurrence of a present liability, and did not, in my opinion, constitute "an incurred and properly accrued" liability in the taxable year. It was a future liability and not one in esse, and one that was not enforceable until the notes became due and payable. The uniform holding in analogous cases, decided by the Board of Tax Appeals, is that reserves for contingent liability are deductible only when the liability is paid. See Appeal of Helvetia Milk Condensing Co., 5 B. T. A. 271; Amigo Coal Co. v. Com'r of Internal Revenue, 8 B. T. A. 598; and Harris-Emery Co. v. Com'r of Internal Revenue, 10 B. T. A. 297, where the board repeated its former ruling in Appeal of Uvalde Co., 1 B. T. A. 932: "That the taxing act has made no provision for the deduction of future expenses however accurately the same may be estimated."

The theory advanced by plaintiff is not deemed tenable, since the agreement for payment of the advertising in the year 1920 was simply an agreement yet to be performed. The benefit did not materialize during the taxable year. See volume 1, p. 721, Montgomery Income Tax Procedure, and Klein Federal Income Taxation, par. 6, 29 (a). These decisions are fully supported by the federal courts. See U. S. v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Miller & Vidor Lumber Co. v. Com'r of Internal Revenue (C. C. A.) 39 F.(2d) 890. The adjudications relied on by plaintiff are not apposite, for on examination I find the facts to have been materially different from the facts in the instant case. In the Kleeman Dry Goods Co. Case, 2 B. T. A. 369, for example, the asserted deduction was for advertising in the taxable year, and manifestly was a necessary expense from which a benefit was derived during that year; as to such expense, it was "an incurred and accrued liability." The other citations are equally distinguishable on the facts, and the expenses pertained to the year for which the deduction was claimed.

The next question arises from the claimed deduction on its income tax return for the year 1919, wherein it set out the sum of $10,011.63, which had been received by it from the government in January, 1920, as compensation on account of cancellation of a contract between plaintiff and the government for deliverance of material used by the War Department. On subsequent audit, the claimed deduction was rejected. There was much negotiating concerning this claim in controversy, as plainly indicated by the exhibits in evidence. On August 11, 1919, plaintiff agreed to accept the amount in adjustment of its claim, but further correspondence ensued relating to payment, apparently continued to February 5, 1920, when plaintiff received payment and made entry on its books as income for the year 1920. In this connection it is important to note that, prior to the time the money was received, plaintiff, on January 29, 1920, was advised by the Department that the difficulty had been straightened out and allotment received under which to make payment.

The government attaches importance to Exhibit 8, recommending the adjustment by the Secretary of War, and Exhibit 13, awarding the amount in full payment, and plaintiff's acceptance in August, 1919, and claims that, as the final payment was determined upon in the taxable year 1919, it was accrued income under plaintiff's method of keeping its books; in other words, that plaintiff's liability ran from the time of the agreed liqui-

dation in 1919, or from the time the amount became due.

In view of the circumstances, however, I am disinclined to adopt this view. While the amount was apparently agreed upon in 1919, yet, under plaintiff's accrual system of bookkeeping, it was not regarded, as the evidence shows, as a final adjustment, or as income, until the money was actually received by plaintiff. The adjusted amount was not income until, as ruled in Naitove & Co. v. Commissioner, 59 App. D. C. 53, 32 F.(2d) 949, 951, "it is definitely received."

The plaintiff, therefore, may have a decree for the return of the amount erroneously exacted on its income tax return for the year 1919 in accordance with the above conclusions. Findings of fact and conclusions of law in conformity with the foregoing may be submitted for signature, embodying proper computations. So ordered.